Tagged Opinion

ORDERED in the Southern District of Florida on 4/28/08

John K. Olson, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE

In re:

**RICHARD L. BRYER,**

    Debtor.
_____/

CASE NO.: 07-12387-BKC-JKO

CHAPTER 7

**AMENDED ORDER FINDING NORTH STAR CAPITAL ACQUISITION LLC
AND NELSON, WATSON & ASSOCIATES, LLC IN CIVIL
CONTEMPT FOR VIOLATING DISCHARGE INJUNCTION
AND FOR NOT APPEARING AT THE APRIL 21, 2008 HEARING**

** This order amends a clerical mistake as to the date in decretal ¶ 6 **

THIS CASE is before me on the Order to Show Cause Why North Star Capital Acquisition LLC ("North Star") and Nelson, Watson & Associates, LLC ("Nelson") Should Not Be Held In Contempt for Violating Discharge Injunction (the "Show Cause Order") [DE 26]. A hearing on the

Show Cause Order was set for April 21, 2008 at 9:31 a.m. Both entities were directed to appear and explain why they had engaged in conduct which appeared to violate the discharge injunction previously entered in this case. The Show Cause Order provided that, "In the event that either Nelson, Watson & Associates, LLC or North Star Capital Acquisition LLC fail to appear as directed . . . they will be held in contempt of this Court and appropriate sanctions will be imposed." At the April 21st hearing no counsel appeared on behalf of either North Star or Nelson. Accordingly, both entities are in civil contempt and appropriate sanctions will be levied.

The Debtor has received a demand for payment from Nelson seeking to collect on an account on which the original creditor was Wells Fargo Financial ("Wells Fargo") and on which the current creditor is North Star. A copy of the demand is attached to the Motion to Reopen Chapter 7 Case [DE 24]. The Debtor filed his petition in this case on April 4, 2007. He scheduled a debt owed to Wells Fargo in the amount of $976, the amount alleged by Nelson as having been originally owed to Wells Fargo and which it seeks to collect (with interest) for North Star. The Debtor received his bankruptcy discharge on July 3, 2007, and this case was closed on July 20, 2007.

Section 524 of the bankruptcy code provides the debtor with a discharge injunction against collection of debts discharged in bankruptcy, and thus embodies the "fresh start" concept of the bankruptcy code. This provision is the barrier that prevents creditors from reaching the debtor's wages, property or assets. Section 524 provides, in relevant part:

> (a) A discharge in a case under this title ...
>
> (2) Operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived ...

11 U.S.C. § 524. The demand sent to the Debtor by Nelson on behalf of North Star violates this injunction.

Based on their failure to appear at the April 21st hearing and their violation of the § 524 discharge injunction, North Star and Nelson are in contempt of court. I must therefore consider the appropriate sanction to impose based on this contemptuous conduct. The Court's power to determine that a party is in contempt of the court is based both in 11 U.S.C. § 105(a), *Hardy v. Internal Revenue Service (In re Hardy)*, 97 F.3d 1384, 1390 (11th Cir. 1996); *Placid Refining Co. v. Terrebone Fuel & Lube, Inc.*, 108 F.3d 609 (5th Cir. 1997), and in the inherent power of the federal courts to sanction contemptuous conduct, *Glatter v. Mroz (In re Mroz)*, 65 F.3d 1567, 1574-75 (11th Cir. 1996); *Eck v. Dodge Chemical Co.*, 950 F.2d 798 (1st Cir. 1991).

The inherent power of the federal court to punish for contemptuous conduct is well established and this power reaches both conduct before the court and that beyond the court's confines, for "the underlying concern that gave rise to the contempt power was not . . . merely the disruption of court proceedings. Rather, it was disobedience to the orders of the Judiciary, regardless of whether such disobedience interfered with the conduct of trial." *Young v. United States ex rel. Vuitton et Fils S. A.*, 481 U.S. 787, 798 (1987) (citations omitted).

In *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), the Supreme Court addressed the nature and scope of the inherent power vested in the federal courts. The judicial branch has the ability to control the overall judicial proceedings, i.e., to maintain the decorum of the institution, which includes the conduct of parties involved. *Chambers*, at 501 U.S. at 43-44. Such inherent powers, for example, include a federal court's ability to investigate and vacate its own judgment upon proof that a fraud has been perpetrated upon the court, to bar from the courtroom a criminal defendant who

disrupts a trial, to dismiss an action on grounds of forum non conveniens, and it may act *sua sponte* to dismiss a suit for failure to prosecute. *Id.* at 44. In *Chambers*, the Supreme Court discussed the ability of the judiciary to sanction counsel by awarding attorney's fees as a penalty for inappropriate conduct. 501 U.S. at 42-43. For example, circumstances which may dictate the exercise of inherent power to assess attorney fees against counsel, include those where a party has acted in "bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 45-46 (internal citations omitted).

However, the Supreme Court, in Chambers, warned that a court must "exercise caution in invoking its inherent power," stating:

> Because of their very potency, inherent powers must be exercised with restraint and discretion. A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process ... When there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power. But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power.

501 U.S. at 44 & 50 (internal citations omitted). I am thus authorized to cite North Star and Nelson for contempt under the courts' inherent powers for a showing of "bad faith," *Hardy*, 97 F.3d at 1389, n3 (citing *Mroz*, 65 F.3d at 1575). However, in light of my clear authority to sanction the conduct under § 105, I will heed the Supreme Court's and the Eleventh Circuit's caution in utilizing inherent powers where statutory authority exists under which I may act to cite contemptuous conduct and, thus, choose to look solely to § 105 for the following sanctions imposed.

Section 105 of the Bankruptcy Code grants statutory contempt powers in the bankruptcy context, stating, "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Thus, bankruptcy courts have independent statutory powers to award monetary and other forms of relief for violations of the

discharge injunction to the extent such awards are "necessary and appropriate" to carry out the provisions of the Bankruptcy Code. *Hardy*, 97 F.3d at 1389-90 (internal citations omitted). The purpose of a § 105(a) contempt sanctions is to (1) compensate the complainant for losses and expenses it incurred because of the contemptuous act, and (2) coerce the contemnor into complying with the Court's order. *Jove Engineering, Inc. v. Internal Revenue Service*, 92 F.3d 1539, 1557 (11th Cir.1996)(citing *EEOC v. Guardian Pools, Inc.*, 828 F.2d 1507, 1515 (11th Cir.1987); *Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc.*, 793 F.2d 1529, 1534 (11th Cir.1986)).

North Star's and Nelson's disregard of my previous order directing them to appear to show cause and to explain their disregard of the discharge injunction in this case is disturbing. As to the blatant disregard for the Show Cause Order, it is without question that these two entities are in contempt of this Court. To carry out the provisions of the Bankruptcy Code and to effectuate the efficient and equitable prosecution of bankruptcy cases, the Court must be able to direct certain parties to attend hearings. In this instance, North Star and Nelson have attempted to collect a discharged debt. This conduct violates the fundamental principle of the Bankruptcy Code – the ability for a debtor to start afresh. I reopened this case and noticed a hearing in an attempt to rectify this violation. By virtue of their disregard for the Show Cause Order, I am faced with the continued concern that North Star and Nelson will carry on their pursuit of this claim and possibly other debts that have been discharged through the bankruptcy process. I find that it is in the public interest to ensure that these parties are coerced in the present matter, and deterred from future conduct which cavalierly disregards bankruptcy orders that direct them to appear at hearings. Accordingly, appropriate sanctions will be imposed.

North Star and Nelson may also be liable for contempt under § 105 if they willfully violated the permanent injunction of § 524. *Jove*, 92 F.3d 1539 at 1553-54. The Eleventh Circuit has stated that "the focus of the court's inquiry in civil contempt proceedings is not on the subjective beliefs or intent of the alleged contemnors in complying with the order, but whether in fact their conduct complied with the order at issue." *Howard Johnson Co. v. Khimani*, 892 F.2d 1512, 1516 (11th Cir.1990) (quoted in *Hardy*, 97 F.3d at 1390; and *Jove*, 92 F.3d at 1554). The Eleventh Circuit has adopted a two-pronged test to determine willfulness in violating the § 524 discharge injunction. Under this test North Star and/or Nelson are in contempt of court if they, (1) knew that there was a discharge injunction, and (2) intended the actions which violated the injunction. *Hardy*, 97 F.3d at 1390.

The facts substantiate that North Star and Nelson have indeed violated the discharge injunction. The Court is left to determine whether this conduct was willful. As to the first element of the willfulness test, the two entities had the requisite knowledge of the Order Discharging the Debtor. Wells Fargo was served with the Order Discharging the Debtor in the above referenced bankruptcy case by electronic transmission on July 4, 2007 and by first class mail on July 5, 2007. *See* [DE 19]. Absent contrary evidence, I find that there was sufficient service of this Order. Thus, the burden rests on North Star and Nelson to provide evidence to demonstrate that they did not have or should not have had "knowledge" of this Court's order discharging the Wells Fargo debt. Given the elapsed time between the service of the Order Discharging the Debtor and Nelson's attempt to collect the debt on March 10, 2008, and absent an appearance of the parties to explain their conduct, I necessarily conclude that the two entities knew or should have known of this Order. As to the second element of the willfulness test, the mere fact that Nelson, on behalf of North Star, attempted

-6-

to collect the debt, establishes that these parties intended the actions which violated the injunction – they attempted to collect discharged debt. Accordingly, North Star and Nelson are in contempt for their willful violation of the discharge injunction and appropriate sanctions will be imposed.

Based upon the foregoing, it is **ORDERED** that:

1. North Star and Nelson are hereby held to be in contempt of this Court by virtue of their failure to attend the April 21, 2008 hearing and for violating the discharge injunction.

2. North Star is **DIRECTED** to pay a monetary fine of $2500.00. Payment by check is made payable to the <u>Clerk of the United States Bankruptcy Court</u>.

3. Nelson is **DIRECTED** to pay a monetary fine of $2500.00. Payment by check is made payable to the <u>Clerk of the United States Bankruptcy Court</u>.

4. North Star and Nelson may purge their contempt by making full payment of their respective monetary fine on or before the end of business <u>**May 30, 2008**</u> at the following address: **<u>U.S. Bankruptcy Court, Southern District of Florida, Fort Lauderdale Division, Room 112, 299 E. Broward Blvd., Ft. Lauderdale, FL 33301</u>**.

5. If North Star fails to tender to the Clerk the above imposed monetary fine on or before May 30, 2008, the Court will by separate order **DIRECT** the United States Marshal to **APPREHEND** <u>David Paris, CEO, of 170 Northpointe Parkway, Suite 300, Amherst, NY 14228</u>, for the purpose of bringing him before the Court to explain North Star's contemptuous conduct and why further sanctions should not be imposed.

6. If Nelson fails to tender to the Clerk the above imposed monetary fine on or before May 30, 2008, the Court will by separate order **DIRECT** the United States Marshal to **APPREHEND** <u>George H. Nelson III, Manager, of 80 Merrimack Street, Lower Level, Haverhill,

MA 01830, for the purpose of bringing him before the Court to explain Nelson's contemptuous conduct and why further sanctions should not be imposed.

7. North Star and Nelson are **DIRECTED** to honor and continue to honor the Section 524 post-discharge injunction and are **DIRECTED** to cease and desist from any further collection efforts with regard to the Wells Fargo debt, and to cease and desist from any collection efforts on **ANY** discharged debt in this or any other bankruptcy case. Since the original debt incurred to Wells Fargo of $976.71 has been discharged, North Star and Nelson are **PROHIBITED** from collecting on the discharged principal amount of any debt or any alleged interest charges arising from the original principal balance. Any failure to follow this order in this or any other bankruptcy case will result in further citations of contempt and impositions of sanctions.

###

Copies to:

Richard L. Bryer
537 N.E. 47th St, Lot #472
Pompano Beach, FL 33064-4144

Nelson, Watson & Associates, LLC
Attention: George H. Nelson III, Resident Agent/Manager/CEO
80 Merrimack Street Lower Level
Haverhill, MA 01830

Nelson, Watson & Associates, LLC
c/o NRAI Services, INC.
2731 Executive Park Drive
Suite 4
Weston, FL 33331

North Star Capital Acquisition LLC
Attention: David Paris, CEO
170 Northpointe Parkway
Suite 300
Amherst, NY 14228

North Star Capital Acquisition LLC
c/o C T Corporation System
1200 South Pine Island Road
Plantation, FL 33324

North Star Capital Acquisition LLC
National Registered Agents
590 Park Str #6
St Paul, MN 55103

Office of the United States Trustee

United States Marshals Service